

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0888-08

**THAI NGOC NGUYEN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

**JOHNSON, J., filed a dissenting opinion.**

### D I S S E N T I N G   O P I N I O N

Officer Johnson stopped appellant for a number of traffic violations–no front license plate, malfunctioning brake light, and driving with high beams with oncoming traffic. The dashboard camera in the police car recorded the entire encounter, from initial stop to arrival at the police station after the arrests.

The officer became suspicious of appellant and his passenger, Sanchez, because their accounts of where they had been and what they had been doing did not match. He began to recite

the required *Miranda*[1] warnings for appellant and got as far as the right to have a lawyer present to advise him prior to and during any questioning, the third of five parts of TEX. CRIM. PROC. article 38.22. At that point, appellant interrupted Officer Johnson and said that he wanted a lawyer. The officer immediately ceased questioning him about the situation and did not complete the prescribed warnings, thereby omitting admonishments that appellant could have an appointed lawyer if he were unable to employ one, and that he has a right to terminate the interview at any time.

Sanchez, the owner of the car, consented to a search of it. Officer Johnson and a second officer who had arrived to assist him found methamphetamine. He arrested Sanchez for the drugs and appellant for the traffic violations and placed both men in the backseat of his car. While the officers searched, appellant and Sanchez argued.

Based on their conversation as heard on the dashboard recorder, they agreed that the drugs belonged to Sanchez's cousin, Chris "Crispy" Sanchez. Sanchez seemed aware that he would be charged because the drugs were in his bag and pressured appellant to accept responsibility for the drugs, but appellant resisted. Sanchez called out to the officers. When Officer Johnson went to the police car, Sanchez blamed appellant. The officer stated that he was not going to question appellant about it. During that conversation, the officer's contributions were limited.

Sanchez:     He says it's his, sir. That's his, sir. That's not mine.

Johnson:     Well, I'm not gonna ask him about it. All right? If that's what he told you, that's what he told you.
                    . . .

Appellant:   I don't want to go down for anything right now, I just want to get home.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Sanchez:    Dude, just tell him it's yours.

Johnson:    You're not going home. You're going to jail.

Sanchez:    Can you tell him it's yours, Dawg?

Appellant:   Are you asking me?

Sanchez:    Yeah.

Johnson:    I'm not asking you anything.

Sanchez:    Thai, I'm not going down for you.  Just tell him, Dawg.

Johnson:    Okay, right now, your partner here, your friend, is being faced with charges for you.

Appellant:   I am, too!  I'm being faced with charges, with those same charges as he is.

Johnson:    No, you're not.

Appellant:   What charges am I faced with?

Johnson:    Right now you're faced with traffic charges.

Sanchez:    Dude, will you just tell him it's not mine?

Appellant:   What are the traffic charges? It's not OURS!

During this exchange, appellant expressed his preferences, asked questions, and received only factual answers from the officer.  He also asserted that the drugs belonged to a third party.  Officer Johnson returned to Sanchez's car and continued searching its contents.

Sanchez continued to pressure appellant to claim the methamphetamine.  They called the officer over again.

Johnson:    What are y'all yelling about?

Sanchez:    I got you to tell you it's not mine, it's his.

Appellant:    It's not his.

Johnson:      Huh?

Appellant:    It's not his.

Johnson:      It's not his?

Appellant:    No.

Johnson:      Yeah, it is.  It's in his bag.

Appellant:    But it's not his.  That's the truth, sir.

Sanchez:      He handed it to me.  It's not mine, sir.

Appellant:    Please, I don't want to go to jail.  We both don't want to go to jail.

Johnson:      Okay, well, you're going to jail.  Period.  He's going to jail for possession of meth.

Sanchez:      But it's not mine!

Appellant:    It's not his!

Johnson:      Okay, well, you can tell me that all night long, all right?  You already told me you wanted to talk with an attorney, I'm not gonna ask you any questions about that. You want to tell me that that's your stuff, then tell me that that's your stuff.

Sanchez:      It's the truth, sir, but please, I'm not going to jail for him.

Appellant:    Tell him it's not yours.

Johnson:      He already told me that.  Okay?  That's irrelevant.

Appellant:    You're still gonna take him to jail?

Johnson:      It's in his bag with his checkbook.

Appellant:    But it's not his!

Johnson:      Do you not understand what I'm saying?  If you want to tell me that that's

your meth, then tell me that's your stuff. Other than that, it's his.

Sanchez:     Come on, Dawg!  Please, I'm not going down for your shit!

Appellant:     Honestly, I don't want to, but it's mine.

In this exchange, appellant stated that the drugs were not Sanchez's without questioning by any police officer about illegal conduct.  Officer Johnson sought only to know why they were yelling at him.  When Officer Johnson again returned to the search, he found an Ecstasy tablet in Sanchez's bag.  Sanchez again pressured appellant to claim the drugs.  This time, appellant refused.

After viewing the video tape from the dashboard camera, Officer Johnson did not charge appellant with possession of controlled substances, but did charge him with hindering the apprehension of Sanchez by falsely claiming that the drugs were his.  Appellant moved to suppress his claim of possession because of the failure of Officer Johnson to complete the recitation of the Article 38.22 warnings and because the officer had coerced his claim.  The trial court heard testimony and reviewed the video tape, then denied the motion to suppress.

The court of appeals found that the trial court erred in denying the motion to suppress based on the officer's statement, "Do you not understand what I'm saying?  If you want to tell me that that's your meth, then tell me that's your stuff. Other than that, it's his."  It was only after that statement that appellant said, "It's mine."  On every other occasion, appellant said, "It's not his."

There is no contention that appellant was not in custody or that he was not the one who reinitiated contact.  The bone of contention was the failure of Officer Johnson to complete the required warnings after his recitation was interrupted by appellant.

Hindering Apprehension or Prosecution, TEX. PENAL CODE § 38.05, states that a "person commits and offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of

another for an offense . . . he: . . . provides or aids in providing the other with any means of avoiding arrest or effecting escape . . .." At the end on the hearing on appellant's motion to suppress, the trial court made findings.

> [T]he conversation had between the officer and the suspect, that aren't really at issue here in the Motion to Suppress, were initiated by the defendant and though that does not in and of itself make them a waiver of his rights, I believe considering all of the facts and circumstances that I have heard, that he was well aware that by talking to the officer it could bring charges upon himself and that he knowingly and voluntarily reinitiated contact after having been given the bulk of his Miranda warnings.

I agree with the findings of the trial court. Appellant had been informed that he could remain silent, that anything he said could be used against him in a court of law, and that he was entitled to have a lawyer with him prior to and during questioning. Knowing those three things, he reinitiated contact with the police, under coercion by only Sanchez and, before the statement by Officer Johnson cited by the court of appeals, he stated at least six times, "It's not his." "It" certainly referred to the methamphetamine found in Sanchez's car, and "his" referred to Sanchez.

Put in the form of a syllogism, if one of two possibilities must be true and A is false, then B must be true. There were two people in the car. Legally, the drugs were possessed by at least one of them. If appellant said that the drugs were not in Sanchez's possession, then they, logically, had to be in appellant's possession. The word "mine" is not required.

The video tape reveals that appellant knew, when he claimed the drugs and thereby exonerated Sanchez, that he would be arrested instead of Sanchez; Sanchez had repeatedly assured appellant that, if he would "take the rap" for Sanchez, Sanchez would bail appellant out. Appellant's repeated assertions that the drugs did not belong to Sanchez may in fact have been true–they may actually have belonged to Sanchez's cousin–but possession was the issue, not ownership. He

certainly intended to at least hinder the arrest of Sanchez, if not the prosecution and conviction of him.

Because the word "mine" is not required in order to profess possession, appellant fulfilled the requirements of Section 38.05 when, intending to "take the rap" for Sanchez, he initially claimed the drugs during the second colloquy by saying, "It's not his." Officer Johnson's only question up to that point had been, "What are y'all yelling about?" This is not the sort of interrogation contemplated by *Miranda*.

*Miranda*,[2] and our state statute,[3] apply only to custodial interrogation. Although appellant was undeniably in custody and had said that he wanted a lawyer, he reinitiated contact by calling out to Officer Johnson. His first statement that the drugs were not Sanchez's, which fulfilled the elements of the offense of hindering apprehension, was not a result of police interrogation. The next four iterations of that statement were also not the result of police interrogation; they all happened before Officer Johnson said anything that could even be stretched into "reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Therefore, the incomplete warnings do not bar admission of the statement.

I respectfully dissent.


Filed: July 1, 2009
Publish

---

[2] *Miranda,* 384 U.S. at 476-77.

[3] TEX. CODE CRIM. PROC. art. 38.22, § 3.